1  **Ross C. Goodman, Esq., Nevada State Bar No. 7722**
   **GOODMAN LAW GROUP**
2  520 South Fourth Street
   Las Vegas, Nevada 89101
3  (702) 383-5088
   (702) 385-5088 (Facsimile)
4
   **Randall J. Baron, Esq., California State Bar No. 150796**
5  **A. Rick Atwood, Jr., Esq., California State Bar No. 156529**
   **David T. Wissbroecker, Esq., California State Bar No. 243867**
6  **Eun Jin Lee, Esq., California State Bar No. 264208**
   **ROBBINS GELLER RUDMAN & DOWD LLP**
7  655 West Broadway, Suite 1900
   San Diego, CA 92101
8  (619) 231-1058
   (619) 231-7423 (Facsimile)
9
   **ATTORNEYS FOR PLAINTIFF**
10
                    **UNITED STATES DISTRICT COURT**
11                      **DISTRICT OF NEVADA**

12  DEVIN WEISLEDER, on behalf of himself  )
    and all others similarly situated,            )
13                                                 )   Case No. _____
                           Plaintiff,              )
14                                                 )
                 v.                                )   **CLASS ACTION COMPLAINT**
15                                                 )
    FORCE PROTECTION, INC., MICHAEL    )   **JURY DEMAND**
16  MOODY, ROGER G. THOMPSON, JR.,     )
    LYNN BRUBAKER, THOMAS               )
17  CORCORAN, JACK A. DAVIS, JOHN S.    )
    DAY, B. HERBERT ELLIS, KENNETH A.   )
18  MERLAU, JOHN W. PAXTON, SR.,        )
    GENERAL DYNAMICS CORPORATION  )
19  and FALCON ACQUISITION CORP.,       )
                                                   )
20                         Defendants               )
                                                   )
21  _____

22
            Plaintiff, by his attorneys, submits this complaint against the defendants named herein and
23
    alleges as follows:
24
                               **SUMMARY OF THE ACTION**
25
            1.      This is a stockholder class action brought by plaintiff on behalf of the holders of
26
    Force Protection, Inc. ("Force Protection" or the "Company") common stock against its Board of
27
    Directors (the "Board") arising out of their breaches of fiduciary duty in connection with their efforts
28

                                              - 1 -

1   to complete the sale of the Company to General Dynamics Corporation ("General Dynamics")
2   following a grossly unfair sales process and for an unfair price (the "Proposed Acquisition"). The
3   Board was aided and abetted in its breaches of fiduciary duty by Force Protection and General
4   Dynamics. This action seeks equitable relief only.

5         2.      Force Protection is a global leader in blast- and ballistic-protected armored vehicles
6   and other survivability products. Force Protection has recently emerged from a troubled period that
7   included a shareholder lawsuit alleging that former top executives made tens of millions of dollars
8   while causing the Company's stock to tumble and damaging the Company's reputation in the
9   marketplace. The Company's stock, once a $30 highflier in 2007, dropped to the mid-single digits
10   by 2008. Numerous analysts, however, continued to recognize that the Company's stock price in the
11   market undervalued the intrinsic value of the Company. At least one analyst projected a 25% growth
12   rate in 2011 and projected 43% growth over the next five years for Force Protection, and noted that a
13   discounted cash flow analysis assuming a modest 13% growth rate yielded a valuation of *over*
14   *$10.00 per share* for the Company.

15         3.      Force Protection's shareholders will not be allowed to share in the Company's
16   expected future success. On November 7, 2011, Force Protection and General Dynamics announced
17   that Force Protection had entered into a definitive merger agreement (the "Merger Agreement") with
18   General Dynamics and Falcon Acquisition Corp. ("Falcon"), a wholly-owned subsidiary of General
19   Dynamics, pursuant to which Falcon will commence an offer (the "Tender Offer") to acquire all of
20   the outstanding shares of the Company's common stock for $5.52 per share, net to the seller in cash
21   without interest.

22         4.      The Proposed Acquisition does not adequately value the Company's current value
23   and future growth prospects. In fact, the consideration offered in the Proposed Acquisition is less
24   than the Company's 52-week high of $6.00 per share set on January 10, 2011, and less than the
25   $5.73 per share that the Company recently traded at in February 2011. On each day following the
26   announcement of the Merger Agreement, the Company's stock traded above $5.52, further
27   demonstrating recognition of the inadequacy of the consideration offered in the Proposed
28   Acquisition.

1    5.    Defendants timed the Proposed Acquisition to capture Force Protection's current
2 value and future potential for General Dynamics without paying an adequate or fair price to the
3 Company's public stockholders. Indeed, General Dynamics expects the deal to boost its profits by
4 as early as 2012. The Proposed Acquisition also sets General Dynamics up to be a more formidable
5 competitor both in the United States and internationally for the few major armored vehicle contracts
6 likely to occur in the next few years. General Dynamics is "getting a bargain," confirmed stock
7 analyst Paul Meeks of Winsor Asset Management, who has been following the Company for years:
8 "'I do think the value is pretty cheap.'"

9    6.    Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up
10 the Proposed Acquisition with deal protection devices that preclude other bidders from making a
11 successful competing offer for the Company, despite the fact that there is no indication that the
12 Board made any efforts to conduct a pre-signing market check. Specifically, defendants agreed to:
13 (i) a termination fee provision that requires the Company to pay General Dynamics a termination fee
14 of $10 million and expenses of up to $2 million; (ii) a "no solicitation" provision that prevents the
15 Company from negotiating with or providing confidential Company information to competing
16 bidders except under extremely limited circumstances; (iii) a "matching rights" provision that allows
17 General Dynamics three days to match any superior proposal; (iv) an "information rights" provision
18 that requires the Board to provide General Dynamics with confidential, competitively sensitive
19 information about competing proposals for the Company, akin to "bid-tipping"; and (v) a "Top-Up"
20 option that permits General Dynamics to close a short-form merger for the Company without
21 securing 90% of the outstanding shares as required by law.

22    7.    In pursuing the unlawful plan to sell General Dynamics, each of the defendants
23 violated applicable law by directly breaching and/or aiding and abetting the other defendants'
24 breaches of their fiduciary duties of loyalty, candor, due care, independence, good faith and fair
25 dealing. Immediate judicial intervention is warranted here to rectify existing and future irreparable
26 harm to the Company's shareholders. Plaintiff, on behalf of the Class, seeks to level the playing
27 field so that if shareholders are to be ultimately stripped of their respective equity interests through
28

1 the Proposed Acquisition, the Proposed Acquisition is conducted in a manner that is not overtly

2 improper, unfair and unlawful and is conducted in a manner that maximizes shareholder value.

3 <center>**JURISDICTION AND VENUE**</center>

4     8.    This Court has jurisdiction over the defendants named herein because defendant

5 Force Protection is incorporated in Nevada and defendants conduct business in and/or maintain

6 operations in Nevada.

7     9.    Venue is proper in this Court because the conduct at issue took place and/or had an

8 effect in this County.

9 <center>**PARTIES**</center>

10     10.    Plaintiff Devin Weisleder is, and at all times relevant hereto was, a shareholder of

11 Force Protection.

12     11.    Defendant Force Protection is a publicly traded company incorporated in Nevada.

13 Force Protection's shares trade on the NASDAQ under the symbol "FRPT."

14     12.    Defendant Michael Moody ("Moody") is and at all relevant times has been the

15 President, Chief Executive Officer and Chairman of the Board of Force Protection.

16     13.    Defendant Roger G. Thompson, Jr. is and at all relevant times has been the lead

17 director of the Board of Force Protection.

18     14.    Defendant Lynn Brubaker is and at all relevant times has been a director of Force

19 Protection.

20     15.    Defendant Thomas Corcoran is and at all relevant times has been a director of Force

21 Protection.

22     16.    Defendant Jack A. Davis is and at all relevant times has been a director of Force

23 Protection.

24     17.    Defendant John S. Day is and at all relevant times has been a director of Force

25 Protection.

26     18.    Defendant B. Herbert Ellis is and at all relevant times has been a director of Force

27 Protection.

28

<center>- 4 -</center>

1    19.    Defendant Kenneth A. Merlau is and at all relevant times has been a director of Force
2  Protection.

3    20.    Defendant John W. Paxton, Sr. is and at all relevant times has been a director of Force
4  Protection.

5    21.    Defendant General Dynamics is a leading manufacturer of wheeled, tracked and
6  amphibious combat vehicles, offering a spectrum of design, production and lifecycle support to
7  customers worldwide. General Dynamics develops vehicles designed to meet current and future
8  ground-combat requirements.

9    22.    Defendant Falcon is a Nevada corporation and a wholly-owned subsidiary of General
10  Dynamics and is being used to facilitate the Proposed Acquisition. Falcon and General Dynamics
11  are referred to herein as "General Dynamics."

12    23.    The defendants named above in ¶¶12-20 are collectively referred to herein as the
13  "Individual Defendants."

14                **DEFENDANTS' FIDUCIARY DUTIES**

15    24.    Where the directors of a publicly traded corporation undertake a transaction that will
16  result in either (i) a change in corporate control or (ii) a break up of the corporation's assets, the
17  directors have an affirmative fiduciary obligation to obtain the highest value reasonably available to
18  the corporation's shareholders, and if such transaction will result in a change of corporate control,
19  the shareholders are entitled to receive a significant premium. To diligently comply with these
20  duties, the directors and/or officers may not take any action that:

21        (a)    adversely affects the value provided to the corporation's shareholders;

22        (b)    will discourage or inhibit alternative offers to purchase control of the
23  corporation or its assets;

24        (c)    contractually prohibits themselves from complying with their fiduciary duties;

25        (d)    will otherwise adversely affect their duty to search and secure the best value
26  reasonably available under the circumstances for the corporation's shareholders; and/or

27        (e)    will provide the directors and/or officers with preferential treatment at the
28  expense of, or separate from, the public shareholders.

1      25.    In accordance with their duties of loyalty and good faith, the Individual Defendants,

2  as directors and/or officers of Force Protection, are obligated under Nevada law to refrain from:

3          (a)    participating in any transaction where the directors' or officers' loyalties are

4  divided;

5          (b)    participating in any transaction where the directors or officers receive, or are

6  entitled to receive, a personal financial benefit not equally shared by the public shareholders of the

7  corporation; and/or

8          (c)    unjustly enriching themselves at the expense or to the detriment of the public

9  shareholders.

10     26.    Plaintiff alleges herein that defendants, separately and together, in connection with

11  the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties, including their

12  duties of loyalty, good faith, and independence owed to plaintiff and other public shareholders of

13  Force Protection. Defendants stand on both sides of the transaction, are engaging in self-dealing, are

14  obtaining for themselves personal benefits, including personal financial benefits, not shared equally

15  by plaintiff or the Class, and are choosing not to provide shareholders with all information necessary

16  to make an informed decision in connection with the Proposed Acquisition and/or are aiding and

17  abetting the other defendants' breaches. As a result of defendants' self-dealing and divided loyalties,

18  neither plaintiff nor the Class are being treated fairly in connection with the Proposed Acquisition.

19     27.    Defendants also owe the Company's stockholders a duty of truthfulness under

20  Nevada law, which includes the disclosure of all material facts concerning the Proposed Acquisition

21  and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants

22  are knowingly or recklessly breaching their fiduciary duties of candor and good faith by failing to

23  disclose all material information concerning the Proposed Acquisition, and/or aiding and abetting the

24  other defendants' breaches.

25     28.    Defendants are knowingly or recklessly breaching their duties of loyalty, good faith,

26  independence and candor in connection with the Proposed Acquisition, and/or aiding and abetting

27  the other defendants' breaches, and have the burden of proving the inherent or entire fairness of the

28  Proposed Acquisition, including all aspects of its negotiation, structure, price and terms.

1

## THE PROPOSED ACQUISITION

2      29.      Force Protection is a global leader in blast- and ballistic-protected armored vehicles

3   and other survivability products. Force Protection's products protect and save the lives of the armed

4   forces of the United States and its allies.

5      30.      Founded about 15 years ago, Force Protection swelled from a $10 million startup with

6   200 workers in 2004 to a $1.3 billion defense industry with 2,000 employees three years later, driven

7   largely by the wars in Iraq and Afghanistan.   In early 2007, it went public and months later

8   announced its biggest contract, a $490 million deal with General Dynamics serving as its joint-

9   venture partner.

10     31.      In 2008, Force Protection shareholders filed a lawsuit in federal court, alleging,

11   among other things, that former top executives violated federal securities laws by making false

12   statements about delivery delays and a flawed accounting system, and making tens of millions of

13   dollars in stock trades before resigning (the "2008 Lawsuit").

14     32.      32.      Force Protection's stock plummeted as scandals rocked the Company and

15   Force Protection lost its former monopoly in providing mine-resistant, ambush-protected vehicles to

16   the Defense Department.  As seen below, Force Protection's stock, once a $30 highflier, dropped to

17   the mid-single digits.

18  

27     33.      Still, analysts continued to believe that the Company was more valuable than

28   reflected in its stock price.  Peter Cohan, a Massachusetts-based investment strategist and frequent

1 commentator on CNBC, stated that Force Protection's stock actually looked cheap based on the

2 Company's future earnings projections. Cohan indicated that he believed that the Company's stock

3 might trade much higher – perhaps topping $12 a share.

4     34.     Force Protection brought in new management, including defendant Moody as the

5 CEO, in 2008. Despite its financial problems, Force Protection decided to reward its top executives.

6 For example, in November of 2008, the Company formally enacted new "long-term incentives" that

7 added generous stock-based awards to its executive compensation plans. Force Protection granted

8 490,000 shares of restricted stock (worth almost $3 million in 2009) to its top five executives. The

9 Company gave those same executives 285,000 stock options as well. Those options allowed

10 Company leaders to buy stock at $3.28 a share – the lowest closing price recorded since the original

11 grant date – and immediately sell it at a tidy profit. Defendant Moody, by himself, picked up more

12 than half of those stock-based awards. And in March 2009, Force Protection took an extraordinary

13 step that essentially doubled the cash bonuses allowed for some of its senior executives. Force

14 Protection issued additional "discretionary" bonuses to its three top executives – including $400,000

15 for its CEO – based on the Company's progress on such routine matters as regulatory compliance

16 and corporate communications.

17     35.     By late 2010, Force Protection began to move forward out of the its troubled history.

18 In or around October 2010, Force Protection settled the 2008 Lawsuit for $24 million.

19     36.     In or around November 2010, Force Protection won an important new contract with

20 the U.K. Ministry of Defense. Headlined by this estimated $280 million contract, Force Protection

21 exceeded $1 billion in sales in 2008. Moreover, analysts stated that this contract was likely a

22 stepping stone to other larger contracts. Moreover, analysts expected that even without these

23 contracts, Force Protection would grow its revenue over 2010, with improved gross margins, and,

24 with no lawsuits to settle, that Force Protection's earnings would be higher for 2011.

25     37.     On March 9, 2011, the Company announced that the Board had authorized the

26 Company to repurchase up to $20 million worth of its common stock in the open market or in private

27 transactions. During the first quarter, the Company repurchased 228,125 shares of its common stock

28 in the open market at a cost of $1.1 million. Analysts noted: "[Force Protection] is cheap by any

1  measure. But it gets even cheaper when the above mentioned share repurchase is taken into account.

2  20 million in share repurchases may not see[m] like a lot, but when the small size of the company is

3  taken into consideration, the impact is significant."

4      38.    On May 9, 2011, Force Protection announced its financial results for the first quarter

5  of 2011 which included increased revenues as compared to the first quarter of 2010. The Company

6  reported net sales of $141.4 million versus $134.8 million in the first quarter of 2010. In addition, as

7  a result of its funded backlog, and the significant contract awards it had secured, the Company

8  announced solid visibility on its expectation of revenue and earnings growth for the 2011 full year.

9  The press release stated as to the Company's financial position:

10      Net cash used in operating activities during the 2011 first quarter was $5.6
million, as compared to $10.5 million during the first quarter of 2010. The Company
11  ended the first quarter of 2011 with cash of $141.2 million, inventories of $72.5
million, and accounts payable of $50.9 million. In addition, accounts receivable was
12  $96.7 million, including $49.4 million of earned but unbilled receivables.
Contributing to the $8.8 million decrease in the Company's cash balance during the
13  2011 first quarter was payments of $7.5 million for 2010 estimated federal income
tax and $1.1 million for the repurchase of Company stock on the open market.

14

15      Also at March 31, 2011, the Company had approximately $501 million in
funded backlog, the majority of which is expected to be delivered during the final
nine months of 2011. The Company also noted that its funded backlog at the end of
16  the 2011 first quarter was significantly higher than its approximate $214 million
funded backlog balance as of March 31, 2010.

17

18      Since the end of the 2011 first quarter, the Company has secured a number of
significant contract awards for vehicles and modernization products that collectively
total approximately $200 million. Deliveries under these contracts are expected to be
19  substantially complete by the end of 2011, with the majority anticipated during the
fourth quarter.

20

21      Randy Hutcherson, Chief Operating Officer of Force Protection, commented,
"Our recent contract awards are representative of why we believe our customers will
continue to invest in the necessary resources to protect troops and promote success
22  on the battlefield. The products and services we provide are designed to provide
unsurpassed protection and sustainability, and we will continue to aggressively
23  pursue requirements that support the near and long-term needs of our customers."

24      39.    In the same press release, defendant Moody stated:

25  "While we are clearly pleased that we continue to make significant progress in our
current business and now enjoy solid visibility for 2011, we recognize the critical
26  importance of planning for our future beyond Afghanistan. Our strategic activities in
this effort are multi-faceted, and our business development initiatives designed to
27  secure procurement of core fleet vehicle requirements and multi-year service,
sustainment and modernization programs remain a key component of our long-term
28  strategy.

"As we execute against our plans, we are employing a balanced capital allocation approach that provides the necessary working capital to run the business and flexibility to pursue our critical internal and external growth initiatives, including opportunities to broaden the Company through strategic acquisitions and investments. To enhance our efforts we have recently added key resources to the organization, including a senior strategic advisory group comprised of three recently-retired senior leaders of the militaries in which they served, as well as two new board of directors members that bring a wealth of international, public-company management and board experience. We have also augmented our senior management team in the key area of human resources to ensure we have the optimal structure and programs in place to attract, retain and develop a best in industry employee base. All of these efforts are designed to further transform Force Protection into an innovative, credible and viable long-term provider of survivability solutions."

40. Analysts agreed on the Company's positive prospects. "[T]he real value of the company is probably 45% greater than the share price today," stated one analyst in an April 15, 2011 article, when the Company's share price was $4.54.

41. On August 4, 2011, the Company announced its financial results for the second quarter of 2011, which included net sales of $92.2 million and a net loss of $0.22 per diluted share, with the expectation that the Company would continue its growth in 2011 full year revenue. The press release, in part, stated:

Supported by funded backlog of $728 million at June 30, 2011, the Company reiterates its outlook of growth in 2011 full year revenue as compared to 2010. In addition, the Company continues to make important progress in its business development efforts.

The Company also announced that its board of directors has authorized an additional $10 million for the repurchase of its common stock. The Company is continuing to execute on its existing $20 million share repurchase program, which was authorized in March 2011.

Michael Moody, Chairman and Chief Executive Officer of Force Protection, Inc., said, "We had previously communicated that our 2011 second quarter would be challenging, and our disappointing results certainly reflect that. Due to the timing of awards and deliveries, revenues for the quarter are not representative of our expectations for the remaining quarters of 2011. In addition, the quarter represented a high point for research and development and business development investments we chose to make in pursuit of important opportunities."

42. On November 7, 2011, the Company announced its financial results for the third quarter of 2011, which included net sales of $143.6 million and net income of $0.07 per diluted share. The Company continued to confirm the Company's positive future prospects. The press release stated:

- 10 -

The Company ended the 2011 third quarter with funded backlog of $652 million and cash of $122 million. The Company is also continuing to make progress in its business development efforts, with near-term customer decisions expected on a number of substantial programs.

Michael Moody, Chairman and Chief Executive Officer of Force Protection, Inc., said, "We were pleased to return to profitability during our third quarter after a challenging first half of 2011, which was impacted by the timing of awards and deliveries. Contributing to our 2011 third quarter results was the delivery of 56 vehicles and continued modernization and spares and sustainment revenue. We also achieved a 22 percent gross margin, which was higher than our long-term target of 20 percent."

Mr. Moody continued, "We continue to expect the second half of 2011 will be much stronger than the first six months of the year, including a fourth quarter that should be the most substantial of the year. We also look forward to near-term customer decisions on a number of substantial programs that could benefit our financial results beginning in 2012. This includes a potential second tranche of vehicle orders under the United Kingdom's LPPV program, a contract for service and sustainment of the U.S. Army's fleet of route clearance and MRAP vehicles, Canada's requirement for vehicles and long-term service as part of its TAPV program, and Australia's Land 121 Phase 4 and REDFIN vehicle programs. Success in one or more of these business development pursuits will provide increased visibility to long-term revenue for the Company, as well as move us further away from urgent operational funding."

43. Force Protection's shareholders will not be allowed to share in the Company's expected future success. On the same date, November 7, 2011, Force Protection announced that it had entered into the Merger Agreement, pursuant to which General Dynamics would buy the Company via the Tender Offer for $5.52 per share. The press release stated:

General Dynamics and Force Protection, Inc. today announced that they have entered into a definitive merger agreement under which General Dynamics will acquire Force Protection for a price of $5.52 per share of common stock, or approximately $360 million.

Force Protection will become a part of General Dynamics Land Systems, the Sterling Heights, Mich.-based designer and manufacturer of Abrams main battle tanks and Stryker infantry combat vehicles.

"Force Protection complements and strategically expands General Dynamics' armored vehicle business, adding new products to the expansive portfolio of combat vehicles that we currently manufacture and support," said Mark C. Roualet, president of General Dynamics Land Systems. "In addition, Force Protection's skilled workforce provides high-quality support and sustainment services to an installed fleet of approximately 3,000 vehicles, strengthening our ability to support assets deployed with U.S. forces around the world. With this acquisition, we will create new opportunities to serve domestic and international customers alike."

Michael Moody, chairman and chief executive officer of Force Protection, Inc., commented, "After careful consideration of the strategic direction of Force Protection, our board decided that a sale to General Dynamics would maximize value

for our stockholders. With their armored vehicle business, General Dynamics will be able to pursue opportunities that we could not have pursued as a stand-alone company. As part of the General Dynamics family, our innovative products and offerings will continue to provide militaries worldwide critical assets that save troops' lives."

The proposed acquisition has been approved by the board of directors of each company. Under the terms of the merger agreement, General Dynamics will commence a tender offer for all of the outstanding shares of common stock of Force Protection. Force Protection's board of directors has resolved to recommend that Force Protection stockholders tender their shares into the tender offer in accordance with the terms of the merger agreement. The transaction is subject to the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the companies expect the transaction to be completed by year-end 2011. The transaction is expected to be accretive to General Dynamics' earnings in 2012.

44.     The consideration offered in the Proposed Acquisition undervalues Force Protection's intrinsic value and stand-alone alternatives going forward. As discussed above, despite having gone through some tough times, Force Protection is considered an undervalued stock in the market, and Force Protection has recently confirmed the Company's positive future outlook. Yet the Proposed Acquisition consideration of $5.52 per share is actually below the 52-week high of $6.00 per share set on January 10, 2011, and below the $5.73 per share that it recently traded at in February 2011, and significantly less than the $8.00 price target set by some analysts. In fact, at least one analyst projected a 25% growth rate in 2011 and projected 43% growth over the next five years for Force Protection, and noted that a discounted cash flow analysis assuming a modest 13% growth rate yielded a valuation of *over $10.00 per share*.

45.     Defendants timed the Proposed Acquisition to capture Force Protection's current value and future potential for General Dynamics without paying an adequate or fair price to the Company's public stockholders. Indeed, General Dynamics expects the deal to be accretive to its earnings next year. The Proposed Acquisition also sets General Dynamics up to be a more formidable competitor both in the United States and internationally for the few major armored vehicle contracts likely to occur in the next few years. General Dynamics was "getting a bargain," confirmed stock analyst Paul Meeks of Winsor Asset Management, who has been following the Company for years: "'I do think the value is pretty cheap.'"

1    46.    The Proposed Acquisition is the product of a fundamentally flawed process that

2  yielded an unfair price and was designed to ensure the acquisition of Force Protection by General

3  Dynamics on terms preferential to General Dynamics and Company insiders, but detrimental to

4  plaintiff and the other public stockholders of Force Protection. The Merger Agreement, for example,

5  provides that if payments in respect of the Company's 2011 Short-Term Incentive Program (the

6  "2011 STIP") have not been paid prior to the date on which the closing of the merger occurs, then

7  the payments under the 2011 STIP will be paid at target level at the normally scheduled time for

8  such payments (expected to be in March 2012), to all Company executive officers, unless he/she

9  voluntarily terminates his or her employment or consulting arrangement with the Company.

10    47.    Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up

11  the Proposed Acquisition with deal protection devices that preclude other bidders from making a

12  successful competing offer for the Company, despite the fact that there is no indication that the

13  Board made any efforts to conduct a pre-signing market check. Specifically, defendants agreed to:

14  (i) a termination fee provision that requires the Company to pay General Dynamics a termination fee

15  of $10 million and expenses of up to $2 million; (ii) a "no solicitation" provision that prevents the

16  Company from negotiating with or providing confidential Company information to competing

17  bidders except under extremely limited circumstances; (iii) a "matching rights" provision that allows

18  General Dynamics three days to match any superior proposal; (iv) an "information rights" provision

19  that requires the Board to provide General Dynamics with confidential, competitively sensitive

20  information about competing proposals for the Company, akin to "bid-tipping"; and (v) a "Top-Up"

21  option that permits General Dynamics to close a short-form merger for the Company without

22  securing 90% of the outstanding shares as required by law. The deal protection provisions in the

23  Merger Agreement, separately and collectively, unduly bind the Board to the Proposed Acquisition

24  and make it highly unlikely that the Board will fulfill its fiduciary duties in the future without this

25  Court's intervention.

26    48.    Because defendants dominate and control the business and corporate affairs of Force

27  Protection and are in possession of private corporate information concerning Force Protection's

28  assets, business and future prospects, there exists an imbalance and disparity of knowledge and

- 13 -

1  economic power between them and the public shareholders of Force Protection which makes it

2  inherently unfair for them to pursue any proposed transaction wherein they will reap

3  disproportionate benefits to the exclusion of maximizing stockholder value.

4       49.    As a result of defendants' unlawful actions, plaintiff and the other members of the

5  Class continue to be harmed in that they have been and will continue to be prevented from obtaining

6  the real value of their equity ownership in the Company.

7  <div align="center">**CLASS ACTION ALLEGATIONS**</div>

8       50.    Plaintiff brings this action on his own behalf and as a class action on behalf of all

9  holders of Force Protection stock who are being and will be harmed by defendants' actions described

10  below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust,

11  corporation, or other entity related to or affiliated with any defendant.

12       51.    This action is properly maintainable as a class action.

13       52.    The Class is so numerous that joinder of all members is impracticable. According to

14  Force Protection's U.S. Securities and Exchange Commission ("SEC") filings, there were 64.9

15  million shares of Force Protection common stock outstanding as of October 21, 2011.

16       53.    There are questions of law and fact which are common to the Class and which

17  predominate over questions affecting any individual Class member. The common questions include,

18  *inter alia*, the following:

19       (a)    whether the Individual Defendants have breached their fiduciary duties of

20  undivided loyalty, independence or due care with respect to plaintiff and the other members of the

21  Class in connection with the Proposed Acquisition;

22       (b)    whether defendants are engaging in self-dealing in connection with the

23  Proposed Acquisition;

24       (c)    whether defendants are unjustly enriching themselves and other insiders or

25  affiliates of Force Protection;

26       (d)    whether the Individual Defendants have breached any of their other fiduciary

27  duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition,

28  including the duties of good faith, diligence, honesty and fair dealing;

<div align="center">- 14 -</div>

1           (e)     whether the defendants, in bad faith and for improper motives, have impeded

2 or erected barriers to discourage other offers for the Company or its assets;

3           (f)     whether plaintiff and the other members of the Class would suffer irreparable

4 injury were the transactions complained of herein consummated; and

5           (g)     whether the Individual Defendants have breached their duty to maximize

6 shareholder value and have failed to gather a reasonable body of evidence regarding the value of the

7 Company.

8     54.    Plaintiff's claims are typical of the claims of the other members of the Class and

9 plaintiff does not have any interests adverse to the Class.

10     55.    Plaintiff is an adequate representative of the Class, has retained competent counsel

11 experienced in litigation of this nature, and will fairly and adequately protect the interests of the

12 Class.

13     56.    The prosecution of separate actions by individual members of the Class would create

14 a risk of inconsistent or varying adjudications with respect to individual members of the Class which

15 would establish incompatible standards of conduct for the party opposing the Class.

16     57.    Plaintiff anticipates that there will be no difficulty in the management of this

17 litigation. A class action is superior to other available methods for the fair and efficient adjudication

18 of this controversy.

19     58.    Defendants have acted on grounds generally applicable to the Class with respect to

20 the matters complained of herein, thereby making appropriate the relief sought herein with respect to

21 the Class as a whole.

22 <div align="center">**CAUSE OF ACTION**</div>

23 <div align="center">**Claim for Breach of Fiduciary Duties and Aiding and Abetting**
<br>**Against All Defendants**</div>

24

    59.    Plaintiff repeats and realleges each allegation set forth herein.

25
    60.    The Individual Defendants, aided and abetted by Force Protection and General

26
Dynamics, have violated their fiduciary duties of care, loyalty, candor, good faith, and independence

27

28

1   owed to the public shareholders of the Company and have acted to put their personal interests ahead
2   of the interests of the Company.

3       61.     By the acts, transactions and courses of conduct alleged herein, defendants,
4   individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and
5   other members of the Class of the true value of their investment in Force Protection.

6       62.     The Individual Defendants have violated their fiduciary duties by entering into the
7   Proposed Acquisition without regard to the fairness of the transaction to Force Protection
8   shareholders. Force Protection and General Dynamics aided and abetted the Individual Defendants'
9   breaches of fiduciary duties owed to plaintiff and the other shareholders of Force Protection.

10      63.     As demonstrated by the allegations above, the Individual Defendants failed to
11  exercise the care required, and breached their duties of loyalty, good faith, candor and independence
12  owed to the shareholders of Force Protection because, among other reasons, they failed to ensure a
13  fair process and maximization of shareholder value and/or aided and abetted in the same.

14      64.     Because the Individual Defendants dominate and control the business and corporate
15  affairs of Force Protection, and are in possession of private corporate information concerning Force
16  Protection's assets, business and future prospects, there exists an imbalance and disparity of
17  knowledge and economic power between them and the public shareholders of Force Protection
18  which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap
19  disproportionate benefits to the exclusion of maximizing shareholder value.

20      65.     By reason of the foregoing acts, practices and course of conduct, the defendants have
21  failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward
22  plaintiff and the other members of the Class.

23      66.     As a result of the actions of defendants, plaintiff and the other members of the Class
24  have been and will be irreparably harmed.

25      67.     Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to
26  breach their fiduciary duties owed to plaintiff and the other members of the Class, will not engage in
27  arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to Force
28  Protection shareholders sufficient information to enable them to make informed decisions regarding

1  the sale of their shares in connection with the Proposed Acquisition, and may consummate the
2  Proposed Acquisition, all to the irreparable harm of the members of the Class.

3      68.    Plaintiff and the other members of the Class have no adequate remedy at law. Only
4  through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected
5  from the immediate and irreparable injury which defendants' actions threaten to inflict.

6                              **PRAYER FOR RELIEF**

7      WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and
8  against defendants as follows:

9      A.    Declaring that this action is properly maintainable as a class action;

10     B.    Declaring and decreeing that the Merger Agreement entered into by the Company
11  was approved in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful
12  and unenforceable;

13     C.    Enjoining defendants, their agents, counsel, employees and all persons acting in
14  concert with them from consummating the Proposed Acquisition, unless and until the Company
15  adopts and implements a fair sale process;

16     D.    Directing defendants to exercise their fiduciary duties to obtain a transaction which is
17  in the best interests of Force Protection's shareholders;

18     E.    Rescinding, to the extent already implemented, the Proposed Acquisition or any of
19  the terms thereof;

20     F.    Awarding plaintiff the costs and disbursements of this action, including reasonable
21  attorneys' and experts' fees; and

22     G.    Granting such other and further equitable relief as this Court may deem just and
23  proper.

24

25

26

27

28

- 17 -

1

## DEMAND FOR JURY TRIAL

2        Demand is hereby made by Plaintiff for a jury trial on any and all counts for which

3    trial by jury is permitted by law.

4
                                Respectfully submitted this 21 day of November, 2011.
5

6

7                                    /s/ Ross C. Goodman

8                                    **Ross C. Goodman, Esq., Nevada State Bar No. 7722**
                                     **GOODMAN LAW GROUP**
9                                    520 South Fourth Street
                                     Las Vegas, Nevada 89101
10                                   (702) 383-5088
                                     (702) 385-5088 (Facsimile)

11                                   **Randall J. Baron, Esq., California State Bar No. 150796**
                                     **A. Rick Atwood, Jr., Esq., California State Bar No.**
12                                   **156529**
                                     **David T. Wissbroecker, Esq., California State Bar No.**
13                                   **243867**
                                     **Eun Jin Lee, Esq., California State Bar No. 264208**
14                                   **ROBBINS GELLER RUDMAN & DOWD LLP**
                                     655 West Broadway, Suite 1900
15                                   San Diego, CA 92101
                                     (619) 231-1058
16                                   (619) 231-7423 (Facsimile)

17                                   **ATTORNEYS FOR PLAINTIFF**

18

19

20

21

22

23

24

25

26

27

28

- 18 -